
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
F
JUN 1 6 2017
CLER, U.S. COURT
By
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| OSMIN AGRUELLES MERAZ, | § § | |
| Petitioner, | § § | |
| v. | § § | No. 4:15-CV-836-A |
| LORIE DAVIS, Director,[1] Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § | |
| Respondent. | § § | |

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Osmin Agruelles Meraz, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, Director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

**I. PROCEDURAL HISTORY**

In November 2011 petitioner was indicted in Tarrant County,

---

[1]Effective May 4, 2016, Lorie Davis replaced William Stephens as director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Federal Rule of Civil Procedure 25(d), Davis is automatically substituted as the party of record.

Texas, Case No. 1254009D, on two counts of continuous sexual abuse of two young children, AN and AM.[2] (Adm. R., Clerk's R. 5, ECF No. 10-7.) The state proceeded to a jury trial on count one. (*Id.*, Reporter's R., vol. 2, 5, ECF No. 10-9.) The jury found petitioner guilty and assessed his punishment at life imprisonment. (*Id.*, Clerk's R. 53, ECF No. 10-7.) Petitioner appealed his conviction, but the Fourth Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review. (*Id.*, Op. & Docket Sheet, ECF Nos. 10-5 & 10-3, respectively.) Petitioner also filed two state postconviction habeas applications challenging his conviction. The first was dismissed for noncompliance with the state's form requirements and the second was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. (*Id.*, WR-82,986-01 State Writ & Action Taken, ECF Nos. 10-19 & 10-15, respectively; WR-82,986-02 State Writ & Action Taken, ECF Nos. 10-22 & 10-20, respectively.) This federal petition followed.

The state appellate court summarized the factual background of the case as follows:

---

[2]These are abbreviated versions of the victims' first names used by the appellate court and are used in this opinion.

In August 2011, sisters AN and AM, who were then seven and ten years old, told their mother that appellant had been touching them inappropriately. As a result of the investigation that followed, appellant was charged with continuous sexual abuse of a young child or children. The evidence at trial established that the sisters stayed at their grandmother Carolina's house while their parents were at work. Carolina lived in Grand Prairie, Dallas County, Texas, with her long-time boyfriend—appellant—and her teenage daughter, Stephanie. The sisters consider appellant to be their grandfather. When the sisters started school, Stephanie babysat them at Carolina's house during the summer and on school holidays and breaks. Stephanie was primarily responsible for caring for the sisters, but appellant would do so on occasion when his work as a painter was slow and when the weather prevented him from working. In May 2010, appellant, Carolina, and Stephanie moved into a house with Stephanie's older sister in Arlington, Tarrant County, Texas. During the summers of 2010 and 2011, AM's and AN's mother dropped them off at the house in Arlington every morning. This arrangement continued until August 11, 2011, when the sisters made their outcry to their mother.

Both girls testified at trial. AM testified the first time appellant touched her was at Carolina's house (in Dallas County), when she was seven years old. She testified appellant touched her vagina with his mouth and with his penis. AM said she had her clothes on, but they were "pulled down," and appellant's pants were pulled down. She was on her back on Carolina's bed, and appellant got on top of her and moved around. She testified she saw appellant's private part. AM testified that this happened on repeated occasions at Carolina's house, always in the same bedroom. It also continued to happen after appellant moved to Arlington. She testified that what appellant did most often was to put his penis on her vagina. Sometimes he touched her bottom and breasts with his hand. He told AM he was checking her breasts to see if they were growing. There were also times appellant made AM touch his penis and rub it. She testified he showed her how to grab it and

3

move her hand up and down. The abuse continued
happening whenever she was alone with appellant and
stopped when her sister told their mother.

AN testified she did not remember how old she was
when appellant started touching her, but she was
younger than she was at the time of trial. AN testified
the abuse occurred on the bed in her grandmother's room
at her aunt's house (in Arlington). AN testified she
and appellant both had their clothes on, and he would
put his private part on her private part. One time
appellant made AN put her hand down his pants and touch
his private part and she felt hair. AN also testified
that she was in the room sometimes when appellant would
put his private part on her sister's vagina.

(*Id.*, Op. 2-3, ECF No. 10-5.)

## II. ISSUES

In twelve grounds for relief, petitioner claims that he was denied an interpreter at trial (ground one) and that he received ineffective assistance of trial counsel (grounds two through twelve). (Pet. 6-7, 11-13, ECF No. 1.)

## III. RULE 5 STATEMENT

Respondent believes that petitioner has sufficiently exhausted his state court remedies as to the claims raised and that the petition is not time-barred. (Resp't's Answer 5-6, ECF No. at 11.) 28 U.S.C. § 2244(b), (d). Nor is the petition subject to the successive-petition bar.

## IV. DISCUSSION

**A. Legal Standard for Granting Habeas Corpus Relief**

4

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal

Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States" unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams,* — U.S. —, 133 S. Ct. 1088, 1094 (2013); *Harrington,* 562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2004).

**B. Interpreter**

Under his first ground, petitioner claims that he does not understand English and was denied a Spanish interpreter at trial. (Pet. 6, ECF No. 1.) Petitioner asserts that, although the trial court sua sponte appointed an interpreter, his trial proceeded without the interpreter, that "no translation was available during juror selection and throughout the trial," and that he "did not understand what was developing as trial commenced, resulting in lack to confront and to communicate directly with trial counsel, and listen." (*Id.*)

In his state habeas application, Petitioner's claim largely involved the alleged absence of an interpreter during the voir

dire proceeding and his trial counsel's alleged failure to translate the proceeding for him. (Adm. R., WR-82,986-02 State Writ 7-8, ECF No. 10-22.) Petitioner's trial counsel, Mark S. Rosteet, responded to the allegation in an affidavit filed in the state habeas proceeding as follows:

> Applicant asserts in ground one that defense counsel was ineffective whereby he was denied an interpreter during voir dire and thereby did not possess the sufficient present ability to consult with his lawyer with a reasonable degree of rational and factual understanding of the proceeding against him. I speak Spanish fluently and have represented many Spanish-speaking and bilingual defendants in criminal cases during the last 28 years in practice. I request the services of an interpreter during any contested hearing or trial where the defendant is unable to understand the English language. Applicant admits to a comprehension of the English language. If the record reflects that no interpreter was provided during voir dire, it was only because Applicant stated to counsel that he did not need an interpreter and adequately understood the English language.

(*Id.* at 89-90.)

The state habeas judge, who also presided at petitioner's trial, adopted the state's proposed findings, based primarily on counsel's affidavit and the state habeas record, and entered those findings as follows:

> 2.  Mr. Rosteet speaks Spanish fluently and has represented many Spanish-speaking criminal defendants during his twenty-eight-year law practice.

7

3. The State Bar of Texas Directory confirms that Mr. Rosteet provides Spanish language assistance.

4. Mr. Rosteet does request the services of an interpreter for trials when his client is unable to understand the English language.

5. Mr. Rosteet did not request the service of an interpreter because he did not feel one was necessary.

6. There is nothing to suggest that Mr. Rosteet or his staff were incapable of assisting any English-language deficiencies which the applicant might have in understanding the legal process.

7. The applicant has filed an extensive and detailed writ application and supporting memorandum.

8. The applicant's verification does not indicate that he was assisted in preparing this application and supporting memorandum.

9. There is nothing from the writ record to suggest that the applicant does not adequately understand the English language.

10. The applicant has not established that the appointment of an interpreter was required to assist him in his defense.

(*Id.* at 78-79 (record citations omitted).)

Based on her findings, her recollection of the trial proceedings, and state law, the state habeas judge entered the following legal conclusions in recommending denial of habeas relief:

1. The appointment of an interpreter is required when the trial court becomes aware that the defendant

>    does not understand English.
>
> 2. The fact that a defendant may be more fluent in another language does not require the appointment of an interpreter.
>
> 3. A defendant who does not request an interpreter waives the right to complain on appeal, unless the record otherwise demonstrates the defendant's lack of understanding of the proceedings.
>
> 4. When defense counsel is capable of interpreting for the defendant, the trial court does no err by failing to appoint an interpreter.
>
> 5. The writ record does not establish that the applicant was unable to adequately understand the English language or that Mr. Rosteet was unable to assist the applicant.
>
> 6. The applicant was not improperly denied the services of an interpreter.

(*Id.* at 79 (citations omitted).)

The Texas Court of Criminal Appeals, in turn, denied relief based on the trial court's findings. Petitioner has not presented clear and convincing evidence in rebuttal. Thus, relying on the presumptive correctness of the state courts' factual findings, the state courts' adjudication of the claim is not contrary to or an unreasonable application of federal law as established by the Supreme Court.

The Sixth Amendment ensures the right to be meaningfully present at one's own trial, to assist in one's own defense, to

effective assistance of counsel, and to confront the government's witnesses. U.S. CONST. amend. VI. The due process clause of the Fourteenth Amendment prohibits trying a criminal defendant who lacks capacity to understand the proceedings or to assist in the preparation of his defense. *See Drope v. Missouri,* 420 U.S. 162, 171 (1975). This prohibition refers not only to those who are incompetent, but also to those who are hampered by their inability to communicate in the English language. *United States v. Martinez,* 616 F.2d 185, 188 (5th Cir.1980), *cert. denied,* 450 U.S. 994 (1981) (the use of courtroom interpreters involves a balancing of the defendant's constitutional rights to confrontation and due process against the public's interest in the economical administration of criminal law). Therefore, assuming that petitioner's claim implicates certain federal constitutional rights, petitioner has not established that he was incapable of understanding and communicating in the English language or that counsel, fluent in both English and Spanish, was unable to adequately communicate with petitioner in the Spanish language. Nor did petitioner at any time during the proceedings bring to the court's attention that he needed the aid of an interpreter, although an interpreter was available in the courtroom. (*Id.*, Reporter's R., vol. 2 at 2, 11-12 & 20, vol. 3

10

at 2, 7 & vol. 4 at 16, ECF Nos. 10-9, 10-10 & 10-11.)

**C. Ineffective Assistance of Counsel**

Under grounds two through twelve, petitioner claims he received ineffective assistance of trial counsel. A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The Supreme Court emphasized in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams*, 529 U.S. at 410). Accordingly, it is necessary only to determine whether the state courts' rejection of petitioner's ineffective assistance claims was contrary to or an objectively unreasonable application of *Strickland*. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke*, 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

Petitioner asserts trial counsel was ineffective by—

→ failing to adequately prepare for trial;

→ failing to conduct proper voir dire during jury selection;

→ failing to challenge unqualified jurors;

→ failing to object to the prosecution's commitment questions during voir dire;

→ failing to develop a viable defense strategy;

12

- failing to file a motion for new trial;

- failing to "invoke protection" under *Batson*;

- failing to object to extraneous offense evidence during the punishment phase;

- failing to properly object to extraneous offenses from another county under Texas Rule of Evidence 403;

- failing to "raise provisions for proper outcry witness under T.C.C.P. art. 38.072 and hearsay objections"; and

- failing "to suppress petitioner's inculpatory claim by the state."

(Pet.6-7, 11-13, ECF No. 1.)

To the extent raised in petitioner's state habeas application, counsel denied the allegations and discussed them in his affidavit as follows:

> Applicant states in ground two that counsel was ineffective by not obtaining the services of an investigator and child psychologist, and failing to file motions for discovery and production of "witness list, warrants and waivers, as well as law enforcement and investigation records." Contrary to Applicant's allegation, pursuant to the Open File Policy of the Office of the Criminal District Attorney of Tarrant County, defense counsel was provided with full discovery, including offense reports, arrest reports, written statements, and video interviews and outcry statements of the children who testified at trial. As a Court would not compel the children who are the victims of sexual assault to be interrogated by a child psychologist to determine the veracity of their statements, there was no evidentiary basis for a child psychologist to testify about the "margin of error" of

the allegations of sexual assault brought by the children against Applicant. Furthermore, "margin of error" is a statistical measurement inadmissible as reputation or opinion evidence. Applicant additionally states in ground two that no extraneous motion in limine was filed. The State did provide counsel extraneous offense notice listing 23 extraneous offenses and the Court included a limiting instruction in the jury charge regarding same, thus preserving Applicant's rights. Contrary to Applicant's assertion that counsel only once visited Applicant, counsel visited with Applicant at the jail and during at least six pretrial court appearances, fully informing Applicant of the State's allegations and evidence against him as well conferring with and counseling Applicant regarding his version of the facts.

Applicant complains of alleged errors made during voir dire in grounds three, four, five and eight. Said grounds were not raised on appeal. Nevertheless, I maintain that I performed an effective voir dire examination and execution of peremptory strikes to best obtain a fair and impartial jury based upon trial strategy and without alienating the jury against Applicant.

Applicant asserts in ground six that he was denied an opportunity to testify during the guilty phase of the trial, and then forced to testify during the punishment phase where he was defenseless against the State's unfair line of confusing questions designed to incriminate Applicant." I categorically deny this assertion. All of my clients always make the final decision whether to testify or not to testify at trial, without any promises, threats, force, or coercion.

Applicant asserts in ground seven that he was prohibited from filing a motion for new trial. This assertion is not supported by the record, as Applicant was appointed and received the services of appellate counsel, which would include the filing of a motion for new trial.

14

Applicant asserts in ground nine that counsel was ineffective for failing to object to the extraneous offense testimony of Nina Fernandez (a prior sexual assault of child younger than 14 years of age), because it was "uncorroborated or documented." Texas law provides that said testimony is admissible, and the jury determines the weight of said evidence and whether it proves beyond a reasonable doubt that said extraneous offense occurred.

Applicant asserts in ground ten that counsel was ineffective for failing to object to the jurisdiction of the Court regarding an element of one of the continuous sexual assaults occurring in Dallas County. This issue was raised on appeal and overruled, holding that the Tarrant County Trial Court did have jurisdiction under the law in effect at the time of trial.

Applicant asserts in ground eleven that counsel was ineffective by failing to object to multiple outcry witnesses presented by the State and thus, constituted "bolstering" and prevented Applicant from receiving a fair and impartial trial. Under Article 38.072, Code of Criminal Procedure, a claim of bolstering is not a basis for excluding an outcry statement. Furthermore, Texas law does provide for multiple outcry witnesses, and it is admissible hearsay in trials of sexual assault of children.

Applicant asserts in ground twelve that counsel was ineffective for failing to suppress his "confession" of guilt made in letters written to his wife from jail, as well as the translations read to the jury by an interpreter. Applicant's wife is not an agent of law enforcement, and thus, said "confession" is admissible against Applicant as a statement against interest and was properly admitted into evidence.

At all times I provided effective, experienced and reliable legal advice and counsel to Mr. Meraz.

(Adm. R., WR-82,986-02 State Writ 90-92, ECF No. 10-22 (citation

omitted).)

The state habeas judge adopted the state's proposed findings of fact, too numerous to list here, and made additional findings consistent with counsel's affidavit and the documentary record, and applying the *Strickland* standard, found that counsel had provided petitioner with adequate representation guaranteed by the Sixth Amendment. (*Id.* at 81-83, 107-08.) The judge also found that the following evidence undercut any likelihood that the outcome of the case would have been different with other counsel or if counsel had represented petitioner in another manner:

a. Stephanie Meraz routinely babysat her nieces.

b. The applicant (the long-time boyfriend of Carolina Meraz - Step[hanie's mother) would sometimes help out watching the girls.

c. One day, Stephanie noticed the girls touching each other inappropriately, and contacted their parents.

d. Both AN and AM told their mother that the applicant had been touching them and making them touch him.

e. The applicant pulled down AM's clothes and touched her female sexual with his penis and his mouth.

f. The applicant touched AM's bottom and breasts with his hand, kissed her on the mouth, and had her rub his penis with her hand.

g. AN testified that the applicant touched her

16

>     bottom, female sexual organ, and breasts with his
>     penis through clothing and that once he had her
>     touch his penis and she could feel hair.
>
> h.  AN sometimes saw the applicant abusing AM.
>
> I.  AN and AM repeated the details of their sexual
>     abuse by the applicant to the sexual assault nurse
>     examiner.
>
> j.  The applicant wrote letters to Carolina Meraz in
>     which he admitted his guilt.
>
> k.  N.F. (Carolina Meraz' niece) testified how the
>     applicant sexually abused her from the age of
>     eight or nine to the age of twenty-one.
>
> l.  N.F. testified that the applicant had sexual
>     intercourse with her, made her perform oral sex,
>     and ejaculated on her breasts.

(*Id.* at 83-84 (record references omitted).)

The Texas Court of Criminal Appeals, in turn, denied relief based on the trial court's findings. Petitioner has not presented clear and convincing evidence in rebuttal. Thus, relying on the presumptive correctness of the state courts' factual findings, and having independently reviewed petitioner's claims in conjunction with the state court records, the state courts' adjudication of the claims is not contrary to or an unreasonable application of *Strickland*. Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, refuted by the record, involve state evidentiary rulings or other matters of

17

state law, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous objections, all of which generally do not entitle a state Petitioner to federal habeas relief. *See, e.g., Strickland*, 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Green v. Johnson*, 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) ("[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue" and "counsel is not required to file frivolous motions or make frivolous objections"); *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (an "attorney's actions during voir dire are considered to be a matter of trial strategy"); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"). A petitioner shoulders a heavy burden to refute the premise that "an

state law, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous objections, all of which generally do not entitle a state Petitioner to federal habeas relief. *See, e.g., Strickland*, 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Green v. Johnson*, 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) ("[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue" and "counsel is not required to file frivolous motions or make frivolous objections"); *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (an "attorney's actions during voir dire are considered to be a matter of trial strategy"); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"). A petitioner shoulders a heavy burden to refute the premise that "an

attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner presents no evidentiary, factual, or legal basis in this federal habeas action that could lead the court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d).

Overall, counsel had access to the state's evidence through the district attorney's open-file policy, and petitioner fails to point to any evidence known to counsel that would have led a reasonable attorney to investigate further or that would have warranted additional preparation. *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). Counsel conducted an adequate voir dire, and jurors were struck by agreement (two for cause and seventeen by peremptory strike), alleviating any *Batson* objection. Nor does petitioner demonstrate that an unequivolcally-biased juror served on the jury or that the jury pool was tainted or otherwise contaminated in the state's favor by the state's questions or juror comments. *Virgil v. Dretke*, 446 F.3d 598, 613 (5th Cir. 2006). Counsel advised petitioner of the allegations and evidence against him. Petitioner voluntarily chose not to testify during

the guilt/innocence phase and to testify during the punishment phase. Counsel made appropriate objections or decisions not to object regarding admissibility of the evidence, cross-examined all but one witness, and made closing arguments in both phases of the trial. And, appellate counsel was appointed to represent petitioner on the same day his trial was concluded, relieving trial counsel of any further representation. (Adm. R., Clerk's R. 63, ECF No. 10-7.)

For the reasons discussed herein,

The court ORDERS that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED June 16, 2017.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE